John Rue
Attorney I.D. #: 047032005
John Rue & Associates, LLC
40 South Fullerton Avenue, Ste. 29
Montclair, NJ  07042
862-283-3155
john@johnruelaw.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| R.H. AND M.H. ON BEHALF OF A.H., | § | Civil Action No. _____ |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | **COMPLAINT** |
| | § | **AND** |
| BOROUGH OF SAYREVILLE BOARD | § | **JURY DEMAND** |
| OF EDUCATION AND ANGELICA | § | |
| ALLEN-MCMILLAN, | § | |
| COMMISSIONER OF EDUCATION, | § | |
| IN HER OFFICIAL CAPACITY, | § | |
| *Defendants*. | § | |

Plaintiffs A.H., R.H. and M.H., by way of complaint against Defendants, Borough of Sayreville Board of Education (the "Board") and Angelica Allen-McMillan, Commissioner of Education state as follows:

## NATURE OF ACTION AND JURISDICTION

1.      This is a civil action under the Declaratory Judgment Act, the United States Constitution, 42 U.S.C. §1983, and the New Jersey Law Against Discrimination, seeking declaratory and injunctive relief, as well as monetary

damages, against Defendants for committing acts, under color of law, with the intent and for purpose of depriving Plaintiffs of rights secured by the Constitution of the United States, retaliating against Plaintiff A.H. for her exercise of constitutionally protected speech, and discrimination against A.H. based on her race and against R.H and M.H. based on their association with A.H.

2.      Plaintiffs bring this case primarily to obtain relief for deprivation of rights guaranteed by the First Amendment to the Constitution of the United States.

## PARTIES

3.      Plaintiff A.H. is a citizen of the State of New Jersey, residing in Parlin, an unincorporated community located within Old Bridge Township in the Borough of Sayreville, County of Middlesex, NJ  08879.  A.H. was a minor at the time of the events that gave rise to this matter.

4.      Plaintiff R.H. is the father of A.H., and presently resides in Parlin, NJ 08879.

5.      Plaintiff M.H. is the mother of A.H. and presently resides in Parlin, NJ 08879.

6.      Defendant Borough of Sayreville Board of Education ("Sayreville" or the "Board") is the body corporate within the State of New Jersey charged with the conduct, supervision, and management of the public schools for children who

live within the boundaries of the unincorporated community of Parlin, located within Old Bridge  Township in the Borough of Sayreville, Middlesex County, N.J.

7.   The Board maintain offices at 150 Lincoln Street, South Amboy, NJ 08879.

8.   Angelica Allen-McMillan is the New Jersey Commissioner of Education ("Commissioner Allen-McMillan") and is the state officer in charge of the New Jersey Department of Education, maintaining offices at 100 River View Plaza, Trenton, Mercer County, New Jersey 08625-0500..

9.   Commissioner Allen-McMillan is named herein in her official capacity.

10.   As Commissioner of Education, Commissioner Allen-McMillan is charged by state law with "supervision of all schools of the state receiving support or aid from state appropriations, except institutions of higher education, and ... enforce[ment of] all rules prescribed by the state board" in addition to being given authority to "determine, without cost to the parties, all controversies and disputes arising under the school laws."

## JURISDICTION AND VENUE

11.   This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. Sections 1331 and 1343, inasmuch as this case arises under 42 U.S.C. § 1983 and to secure rights guaranteed by the First Amendment to the Constitution and, as to certain state-law claims, in accordance with 28 U.S.C. § 1367, inasmuch as those

claims are so related to the federal claims in the action that they form part of the same case or controversy.

12.     The declaratory and injunctive relief sought is authorized by 28 U.S.C. §2201 and §2202, 42 U.S.C. §1983, and Rule 57 of the Federal Rules of Civil Procedure.

13.     Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b) inasmuch as the actions complained of took place in this judicial district; evidence relevant to the allegations are maintained in this judicial district; and the Defendants are present and regularly conduct affairs in this judicial district.

## FACTS COMMON TO ALL COUNTS

14.     During the 2016-2017 school year, A.H. was an eighth grade student at the Sayreville Middle School.

15.     A.H. was an Honor Roll Student and was a member of the Student Council.

16.     In addition, A.H. provided the morning announcements at Sayreville Middle School.

17.     A.H. further volunteered her time during her lunch period to assist disabled students at Sayreville Middle School.

18.     Sayreville Middle School was a racially diverse institution.

19.     Unfortunately, at the time the A.H. attended Sayreville Middle School, the school suffered from poor race relations.

20.     A.H. was a victim of the Board's attempt to quell that racial tension and a victim of the Board's attempt to regulate A.H.'s right to free speech off of school grounds.

**The State's and the Board's Unlawful Policies**

21.     N.J.S.A. 18A:37-13.1 is known as the "Anti-Bullying Bill of Rights Act."

22.     Pursuant to the Anti-Bullying Bill of Rights Act,

> "Harassment, intimidation or bullying" [(hereinafter, "HIB")] means any gesture, any written, verbal or physical act, or any electronic communication, whether it be a single incident or a series of incidents, that is reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic, that takes place on school property, at any school-sponsored function, on a school bus, or off school grounds as provided for in section 16 of P.L.2010, c.122 (C.18A:37-15.3), that substantially disrupts or interferes with the orderly operation of the school or the rights of other students and that:
>
> > a. a reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his person or damage to his property;
> >
> > b. has the effect of insulting or demeaning any student or group of students; or

    c. creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student.

23.    The Act further requires each public school district in New Jersey to adopt a policy prohibiting HIB on "school property, at a school-sponsored function or on a school bus" that are no less inclusive than the Act.

24.    In accordance with the Act, the Sayreville Board of Education adopted an HIB Policy that generally mirrors the Act (the "Board HIB Policy")..

25.    The Board HIB Policy was in effect at all times relevant to this matter.

26.    The Board HIB Policy provides that it "shall be exercised only when it is reasonably necessary for the student's physical or emotional safety, security and well-being or for reasons relating to the safety, security and well-being of other students, staff or school grounds."

27.    The Board HIB Policy purports, among other things, to regulate conduct, including speech, that occurred "off school grounds, in accordance with law, that substantially disrupts or interferes with the orderly operation of the school or the rights of other students."

28.    Like the Act, the Board HIB Policy further requires an alleged incident be one that:

    A.    A reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging a student's property, or placing a student in reasonable

fear of physical or emotional harm to his/her person or damage to his/her property; or

B.      Has the effect of insulting or demeaning any student or group of students; or

C.      Creates a hostile educational environment for the student by interfering with the student's education or by severely or pervasively causing physical or emotional harm to the student.

**A.H.'s Exercise Of Her First Amendment Right to Free Speech**

29.    On Saturday, February 11, 2017, A.H., then an eighth grade student at Sayreville Middle School, posted a screenshot of a friend with a cosmetic mud mask on her face with the comment "when he says he's only into black girls" on her "Finstagram"[1] account.

30.    A.H. did not create the photo or make the caption.

31.    A.H. added a comment to the post that said, "Ha, ha, ha! Love her -- [laughing face], [laughing face]."

32.    A.H.'s post was satire.

33.    A.H.'s post also constituted political speech.

34.    A.H. made the post off school grounds and outside of school hours.

---

[1]      A "Finstagram" (a contraction of "Fake" and "Insta(gram)") Account is a common parody account, where posters post funny, silly, ugly, funny, or unpolished photographs, as opposed to their real Instagram Account ("Rinsta"), which is for more polished and serious communications.

35.     A.H. posted the screenshot from her personal phone while she was at home, on a network that was not associated with the Sayreville schools, using a personal Finstagram account that she did not receive from the school.

36.     The screenshot did not involve any students served by the Board.

37.     The young woman in the picture was a friend of A.H.'s from her dance class, who did not attend school in Sayreville; she attended school in Monroe Township.

38.     A.H. did not intend to interfere with the school in any way or offend any students in her post.

39.     A.H.'s post was truthful and made with no intent to harm.

40.     A.H. posted the photo on Saturday, February 11, 2017.

41.     The Board, however, did not receive any complaints about the post until Thursday, February 16.

42.     There were no altercations at Sayreville Middle School as a result of the post, no classes were canceled, and there was no need for an assembly to discuss the racial issues at the school.

43.     The sole alleged disruption to the Board was to keep a close watch on the students in the cafeteria due to the fear these students might confront A.H.

44.     On account of the complaints of the students, the Principal launched a Code of Conduct Investigation, while the Board's HIB Specialist also launched an HIB investigation.

45.     Despite the fact that the allegedly offending post occurred off of school grounds, outside of school hours, involved no students at Sayreville Middle School, was not directed to any administrator of the Board, and did not even come to the attention of one of the Board's administrators for five (5) days, the Board HIB Specialist recommended A.H. be found guilty of violating the HIB statute.

46.     The Principal, and then the Superintendent, accepted the HIB Specialist's recommendation.

47.     The Board affirmed the HIB determination and thereafter rejected A.H.'s appeal of that decision (by and through her parents, R.H. and M.H.).

48.     As a result of her post, A.H. received a one-day suspension from school, was removed from the Student Council, which also prevented A.H. from attending a special trip reserved for members of the Student Council, and was removed from her role of making the morning announcements at her school.

49.     A.H. was also prohibited from attending a school assembly as a result of her post.

50.     Emboldened by the Board's determination, A.H.'s classmates began to harass and bully A.H.

51.     School personnel and the Board rejected A.H.'s HIB complaints.

52.     The harassment and bullying that A.H. endured was a direct result of the Board's affirmative HIB finding, Board programs that fostered racial tensions within Sayreville Middle School, and the Board's failure to address A.H.'s concerns about incidents of HIB to which she was a victim.

53.     The Board ignored and/or discounted A.H.'s complaints because she was Caucasian and the aggressors were not.

54.     The Board ignored and/or discounted A.H.'s complaints to quell racial tensions within Sayreville Middle School at A.H.'s expense.

55.     The Board's finding her in violation of the Board HIB Policy, together with its indifference to the bullying that A.H. endured, had a significant impact on A.H.

56.     A.H. no longer felt safe going to school in Sayreville and therefore transferred to a private school.

57.     R.H. and M.H. paid the costs for A.H. to attend a private school as a result of the Board's erroneous determinations regarding their daughter's conduct, the discriminatory policies at Sayreville Middle School, and the Board's failure to provide a safe learning environment for their daughter.

58.     R.H. and M.H., on behalf of A.H., timely appealed the Board's HIB determinations to the New Jersey Commissioner of Education.

59.     By Final Decision dated September 23, 2021, the Commissioner of Education affirmed the HIB decisions of the Board.

60.     Plaintiffs have exhausted their administrative remedies.

### FIRST COUNT
### DECLARATORY JUDGMENT
### AGAINST ALL DEFENDANTS

61.     Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

62.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

63.     As set forth herein, there is presently existing an actual, substantial, and continuing justiciable controversy regarding whether the Act and the Board HIB Policy comply with the United States Constitution.

64.     The parties' dispute is definite and concrete, and touches the legal relationship between the parties, who have adverse legal interests.

65.     On its face, the Act is impermissibly vague inasmuch as it fails to provide a person or student of ordinary intelligence fair warning as to what conduct will be considered HIB conduct.

66.     On its face, the Act is impermissibly vague inasmuch as it fails to provide a person or student of ordinary intelligence fair warning as to what off-campus speech will be considered HIB conduct.

67.     In the alternative, the Act was erroneously applied to A.H.'s conduct because her conduct constituted political speech, satire, or other speech protected by the First Amendment.

68.     On its face, the Board HIB Policy is impermissibly vague inasmuch as it fails to provide a person or student of ordinary intelligence fair warning as to what conduct will be considered HIB conduct.

69.     On its face, the Board HIB Policy is impermissibly vague inasmuch as it fails to provide a person or student of ordinary intelligence fair warning as to what off-campus speech will be considered HIB conduct.

70.     In the alternative, the Board HIB Policy was erroneously applied to A.H.'s conduct because her conduct constituted political speech, satire, or other speech protected by the First Amendment and did not cause a substantial disruption to the orderly operation of Sayreville Middle School.

## SECOND COUNT:
## VIOLATION OF THE
## FIRST AMENDMENT TO THE
## UNITED STATES CONSTITUTION UNDER 42 U.S.C. § 1983
## AGAINST ALL DEFENDANTS

71.    Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

72.    Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"), provides, in relevant part, that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

73.    The First Amendment, as applied to the States through the Fourteenth Amendment, protects the right to freedom of speech.

74.    The Commissioner and the Board is each a "person" for purposes of Section 1983.

75.    In the events described here, the Commissioner was acting under color of New Jersey law.

76.     In the events described herein, the Board was acting under color of law, custom and usage pursuant to the Board HIB Policy and New Jersey law.

77.     A.H.'s statements, outlined above, were protected speech that lacked any meaningful nexus to Sayreville Middle School.

78.     The Board improperly disciplined A.H. for the exercise of her right to freedom of speech in violation of the First Amendment.

79.     The Board's determination that A.H. violated the Board HIB Policy and the imposition of consequences upon A.H., including her one-day suspension, removal from the Student Council, and removal of privileges, deprived A.H. of the rights guaranteed by the First Amendment of the United States Constitution and had, and will continue to have, a chilling effect on her exercise of First Amendment rights.

80.     The Commissioner's affirmance of the Board's HIB determination and the imposition of consequences upon A.H. deprived A.H. of the rights guaranteed by the First Amendment of the United States Constitution and will have a chilling effect on her exercise of First Amendment rights.

81.     While a school may squelch on-campus student speech in limited circumstances to prevent a substantial disruption of the educational process, schools and state actors may not use their power to target off-campus speech that was made

during non-school hours, made no mention of the school or any student, and which in any case did not cause a substantial disruption of the educational process.

82.     This is so even if the speech at issue offends the sensibilities of a school official.

83.     Use of the Anti-Bullying Bill of Rights and the Board's HIB Policy to regulate off-campus speech that lacks any meaningful nexus to the school is contrary to the United States Supreme Court's decisions regarding First Amendment speech and schools.

84.     Use of the Anti-Bullying Bill of Rights and the Board HIB Policy to regulate off-campus speech interfered with the fundamental parental rights of R.H. and M.H. to make decisions concerning the care, custody, and control of A.H.

85.     A.H. suffered damages as a result of the deprivation of her First Amendment rights by Defendants.

86.     R.H. and M.H. have suffered damages as a result of the deprivation of A.H.'s First Amendment Rights and the consequential interference with their parental rights.

## THIRD COUNT:
## VIOLATION OF RIGHT TO FREE SPEECH
## GUARANTEED BY ARTICLE I, PARAGRAPH 6 OF THE
## NEW JERSEY CONSTITUTION AND THE
## NEW JERSEY CIVIL RIGHTS ACT, N.J.S.A. 10:6-1, *ET SEQ.*
## AGAINST THE BOARD

87.     Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

88.     Article I, Paragraph 6 of the New Jersey Constitution secures to every person the right to speak freely, and write and publish her sentiments on all subjects.

89.     The New Jersey Civil Rights Act ("NJCRA") protects a person from the interference with, or deprivation of, any substantive due process or equal protection rights, privileges or immunities secured by federal and New Jersey law and the federal and New Jersey Constitutions.

90.     The Board is a person for purposes of the NJCRA.

91.     The Board's punishment of A.H. for speech that occurred outside of school hours, off school grounds and not at school-sponsored activities, and which did not, and could not have, materially or substantially interrupted the school environment, violated Article I, Paragraph 6 of the New Jersey Constitution.

92.     The Board's punishment of A.H. violated clearly established rights under the federal and New Jersey Constitutions.

93.     A.H. suffered damages as a result of the deprivation of her First Amendment rights by Defendants.

94.     R.H. and M.H. have suffered damages as a result of the deprivation of A.H.'s First Amendment Rights and the consequential interference with their parental rights.

### FOURTH COUNT:
### VIOLATION OF THE NEW JERSEY
### LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1
### AGAINST THE BOARD

95.     Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

96.     The New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"), provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation regardless of his or her race or color.

97.     As such, the NJLAD prohibits, among other things, any unlawful discrimination against any person because of such person's race or color.

98.     The NJLAD further prohibits so-called associational discrimination, whereby a person is aggrieved because the person is closely associated with a person protected by the NJLAD.

99.     The Sayreville Middle School and Sayreville War Memorial High School are places of public accommodation for purposes of NJLAD.

100.   As alleged herein, the Board has discriminated against A.H. based on her race.

101.   As alleged herein, the Board has discriminated against R.H. and M.H. by virtue of their association with A.H.

102.   The Board has violated the NJLAD and has damaged A.H., R.H. and M.H.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.   Declaring that the Anti-Bullying Bill of Rights Act, N.J.S.A. 18A:37-13.1, is impermissibly vague and unconstitutional;

B.   Vacating the Final Decision of the Commissioner of Education as violative of the United States Constitution;

C.   Enjoining the Commissioner of Education from enforcing the Act against A.H.;

D.   Declaring that the Board HIB Policy is impermissibly vague and unconstitutional;

E.   Vacating the Board's determination as to A.H.'s HIB violation;

F.   Directing the Board to remove from A.H.'s student records all mention of the Board's affirmative HIB determination;

G.   Awarding consequential damages to Plaintiffs as against the Board;

H.   Awarding Plaintiffs court costs, expert fees and reasonable attorneys' fees as provided by law; and

H.   Such other and further relief as this Court deems just and appropriate.

**JOHN RUE & ASSOCIATES**
Attorneys for Plaintiffs
A.H., R.H. and M.H.


Dated:  November 8, 2021                 By:_____*s/ John Rue*_____
                                              JOHN RUE

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury of all issues so triable.

**JOHN RUE & ASSOCIATES**
Attorneys for Plaintiffs
A.H., R.H. and M.H.

Dated:  November 8, 2021          By:_____*s/ John Rue*_____
                                    JOHN RUE

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 11.2</u>

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**JOHN RUE & ASSOCIATES**
Attorneys for Plaintiffs
A.H., R.H. and M.H.


Dated:  November 8, 2021                By:_____*s/ John Rue*_____
                                                            JOHN RUE

## <u>DESIGNATION OF TRIAL COUNSEL</u>

John Rue, of the law firm of John Rue & Associates, LLC is hereby designated as trial counsel.

**JOHN RUE & ASSOCIATES**
Attorneys for Plaintiffs
A.H., R.H. and M.H.

Dated:  November 8, 2021            By:_____*s/ John Rue*_____
                                                           JOHN RUE