EXHIBIT  A

John Rue
Attorney I.D. #: 047032005
John Rue & Associates, LLC
40 South Fullerton Avenue, Ste. 29
Montclair, NJ  07042
862-283-3155
john@johnruelaw.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| R.H. AND M.H. ON BEHALF OF A.H., | § | Civil Action No. _____ |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | **COMPLAINT** |
| | § | **AND** |
| BOROUGH OF SAYREVILLE BOARD | § | **JURY DEMAND** |
| OF EDUCATION AND ANGELICA | § | |
| ALLEN-MCMILLAN, | § | |
| COMMISSIONER OF EDUCATION, | § | |
| IN HER OFFICIAL CAPACITY, | § | |
| | § | |
| *Defendants*. | § | |

Plaintiffs A.H., R.H. and M.H., by way of complaint against Defendants, Borough of Sayreville Board of Education (the "Board") and Angelica Allen-McMillan, Commissioner of Education state as follows:

## NATURE OF ACTION AND JURISDICTION

1. This is a civil action under the Declaratory Judgment Act, the United States Constitution, 42 U.S.C. §1983, and the New Jersey Law Against Discrimination, seeking declaratory and injunctive relief, as well as monetary

damages, against Defendants for committing acts, under color of law, with the intent and for purpose of depriving Plaintiffs of rights secured by the Constitution of the United States, retaliating against Plaintiff A.H. for her exercise of constitutionally protected speech, and discrimination against A.H. based on her race and against R.H and M.H. based on their association with A.H.

2.      Plaintiffs bring this case primarily to obtain relief for deprivation of rights guaranteed by the First Amendment to the Constitution of the United States.

## **PARTIES**

3.      Plaintiff A.H. is a citizen of the State of New Jersey, residing in Parlin, an unincorporated community located within Old Bridge Township in the Borough of Sayreville, County of Middlesex, NJ 08879.  A.H. was a minor at the time of the events that gave rise to this matter.

4.      Plaintiff R.H. is the father of A.H., and presently resides in Parlin, NJ 08879.

5.      Plaintiff M.H. is the mother of A.H. and presently resides in Parlin, NJ 08879.

6.      Defendant Borough of Sayreville Board of Education ("Sayreville" or the "Board") is the body corporate within the State of New Jersey charged with the conduct, supervision, and management of the public schools for children who

live within the boundaries of the unincorporated community of Parlin, located within Old Bridge  Township in the Borough of Sayreville, Middlesex County, N.J.

7.    The Board maintain offices at 150 Lincoln Street, South Amboy, NJ 08879.

8.    Angelica Allen-McMillan is the New Jersey Commissioner of Education ("Commissioner Allen-McMillan") and is the state officer in charge of the New Jersey Department of Education, maintaining offices at 100 River View Plaza, Trenton, Mercer County, New Jersey 08625-0500..

9.    Commissioner Allen-McMillan is named herein in her official capacity.

10.    As Commissioner of Education, Commissioner Allen-McMillan is charged by state law with "supervision of all schools of the state receiving support or aid from state appropriations, except institutions of higher education, and ... enforce[ment of] all rules prescribed by the state board" in addition to being given authority to "determine, without cost to the parties, all controversies and disputes arising under the school laws."

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. Sections 1331 and 1343, inasmuch as this case arises under 42 U.S.C. § 1983 and to secure rights guaranteed by the First Amendment to the Constitution and, as to certain state-law claims, in accordance with 28 U.S.C. § 1367, inasmuch as those

claims are so related to the federal claims in the action that they form part of the same case or controversy.

12.    The declaratory and injunctive relief sought is authorized by 28 U.S.C. §2201 and §2202, 42 U.S.C. §1983, and Rule 57 of the Federal Rules of Civil Procedure.

13.    Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(b) inasmuch as the actions complained of took place in this judicial district; evidence relevant to the allegations are maintained in this judicial district; and the Defendants are present and regularly conduct affairs in this judicial district.

## FACTS COMMON TO ALL COUNTS

14.    During the 2016-2017 school year, A.H. was an eighth grade student at the Sayreville Middle School.

15.    A.H. was an Honor Roll Student and was a member of the Student Council.

16.    In addition, A.H. provided the morning announcements at Sayreville Middle School.

17.    A.H. further volunteered her time during her lunch period to assist disabled students at Sayreville Middle School.

18.    Sayreville Middle School was a racially diverse institution.

19.     Unfortunately, at the time the A.H. attended Sayreville Middle School, the school suffered from poor race relations.

20.     A.H. was a victim of the Board's attempt to quell that racial tension and a victim of the Board's attempt to regulate A.H.'s right to free speech off of school grounds.

**The State's and the Board's Unlawful Policies**

21.     N.J.S.A. 18A:37-13.1 is known as the "Anti-Bullying Bill of Rights Act."

22.     Pursuant to the Anti-Bullying Bill of Rights Act,

"Harassment, intimidation or bullying" [(hereinafter, "HIB")] means any gesture, any written, verbal or physical act, or any electronic communication, whether it be a single incident or a series of incidents, that is reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic, that takes place on school property, at any school-sponsored function, on a school bus, or off school grounds as provided for in section 16 of P.L.2010, c.122 (C.18A:37-15.3), that substantially disrupts or interferes with the orderly operation of the school or the rights of other students and that:

a. a reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his person or damage to his property;

b. has the effect of insulting or demeaning any student or group of students; or

      c. creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student.

23. The Act further requires each public school district in New Jersey to adopt a policy prohibiting HIB on "school property, at a school-sponsored function or on a school bus" that are no less inclusive than the Act.

24. In accordance with the Act, the Sayreville Board of Education adopted an HIB Policy that generally mirrors the Act (the "Board HIB Policy")..

25. The Board HIB Policy was in effect at all times relevant to this matter.

26. The Board HIB Policy provides that it "shall be exercised only when it is reasonably necessary for the student's physical or emotional safety, security and well-being or for reasons relating to the safety, security and well-being of other students, staff or school grounds."

27. The Board HIB Policy purports, among other things, to regulate conduct, including speech, that occurred "off school grounds, in accordance with law, that substantially disrupts or interferes with the orderly operation of the school or the rights of other students."

28. Like the Act, the Board HIB Policy further requires an alleged incident be one that:

      A. A reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging a student's property, or placing a student in reasonable

fear of physical or emotional harm to his/her person or damage to his/her property; or

B.     Has the effect of insulting or demeaning any student or group of students; or

C.     Creates a hostile educational environment for the student by interfering with the student's education or by severely or pervasively causing physical or emotional harm to the student.

**A.H.'s Exercise Of Her First Amendment Right to Free Speech**

29.     On Saturday, February 11, 2017, A.H., then an eighth grade student at Sayreville Middle School, posted a screenshot of a friend with a cosmetic mud mask on her face with the comment "when he says he's only into black girls" on her "Finstagram"[1] account.

30.     A.H. did not create the photo or make the caption.

31.     A.H. added a comment to the post that said, "Ha, ha, ha! Love her -- [laughing face], [laughing face]."

32.     A.H.'s post was satire.

33.     A.H.'s post also constituted political speech.

34.     A.H. made the post off school grounds and outside of school hours.

---

[1]     A "Finstagram" (a contraction of "Fake" and "Insta(gram)") Account is a common parody account, where posters post funny, silly, ugly, funny, or unpolished photographs, as opposed to their real Instagram Account ("Rinsta"), which is for more polished and serious communications.

35.    A.H. posted the screenshot from her personal phone while she was at home, on a network that was not associated with the Sayreville schools, using a personal Finstagram account that she did not receive from the school.

36.    The screenshot did not involve any students served by the Board.

37.    The young woman in the picture was a friend of A.H.'s from her dance class, who did not attend school in Sayreville; she attended school in Monroe Township.

38.    A.H. did not intend to interfere with the school in any way or offend any students in her post.

39.    A.H.'s post was truthful and made with no intent to harm.

40.    A.H. posted the photo on Saturday, February 11, 2017.

41.    The Board, however, did not receive any complaints about the post until Thursday, February 16.

42.    There were no altercations at Sayreville Middle School as a result of the post, no classes were canceled, and there was no need for an assembly to discuss the racial issues at the school.

43.    The sole alleged disruption to the Board was to keep a close watch on the students in the cafeteria due to the fear these students might confront A.H.

44.     On account of the complaints of the students, the Principal launched a Code of Conduct Investigation, while the Board's HIB Specialist also launched an HIB investigation.

45.     Despite the fact that the allegedly offending post occurred off of school grounds, outside of school hours, involved no students at Sayreville Middle School, was not directed to any administrator of the Board, and did not even come to the attention of one of the Board's administrators for five (5) days, the Board HIB Specialist recommended A.H. be found guilty of violating the HIB statute.

46.     The Principal, and then the Superintendent, accepted the HIB Specialist's recommendation.

47.     The Board affirmed the HIB determination and thereafter rejected A.H.'s appeal of that decision (by and through her parents, R.H. and M.H.).

48.     As a result of her post, A.H. received a one-day suspension from school, was removed from the Student Council, which also prevented A.H. from attending a special trip reserved for members of the Student Council, and was removed from her role of making the morning announcements at her school.

49.     A.H. was also prohibited from attending a school assembly as a result of her post.

50.     Emboldened by the Board's determination, A.H.'s classmates began to harass and bully A.H.

51.    School personnel and the Board rejected A.H.'s HIB complaints.

52.    The harassment and bullying that A.H. endured was a direct result of the Board's affirmative HIB finding, Board programs that fostered racial tensions within Sayreville Middle School, and the Board's failure to address A.H.'s concerns about incidents of HIB to which she was a victim.

53.    The Board ignored and/or discounted A.H.'s complaints because she was Caucasian and the aggressors were not.

54.    The Board ignored and/or discounted A.H.'s complaints to quell racial tensions within Sayreville Middle School at A.H.'s expense.

55.    The Board's finding her in violation of the Board HIB Policy, together with its indifference to the bullying that A.H. endured, had a significant impact on A.H.

56.    A.H. no longer felt safe going to school in Sayreville and therefore transferred to a private school.

57.    R.H. and M.H. paid the costs for A.H. to attend a private school as a result of the Board's erroneous determinations regarding their daughter's conduct, the discriminatory policies at Sayreville Middle School, and the Board's failure to provide a safe learning environment for their daughter.

58.    R.H. and M.H., on behalf of A.H., timely appealed the Board's HIB determinations to the New Jersey Commissioner of Education.

59.     By Final Decision dated September 23, 2021, the Commissioner of Education affirmed the HIB decisions of the Board.

60.     Plaintiffs have exhausted their administrative remedies.

**FIRST COUNT**
**DECLARATORY JUDGMENT**
**AGAINST ALL DEFENDANTS**

61.     Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

62.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

63.     As set forth herein, there is presently existing an actual, substantial, and continuing justiciable controversy regarding whether the Act and the Board HIB Policy comply with the United States Constitution.

64.     The parties' dispute is definite and concrete, and touches the legal relationship between the parties, who have adverse legal interests.

65.     On its face, the Act is impermissibly vague inasmuch as it fails to provide a person or student of ordinary intelligence fair warning as to what conduct will be considered HIB conduct.

66.    On its face, the Act is impermissibly vague inasmuch as it fails to provide a person or student of ordinary intelligence fair warning as to what off-campus speech will be considered HIB conduct.

67.    In the alternative, the Act was erroneously applied to A.H.'s conduct because her conduct constituted political speech, satire, or other speech protected by the First Amendment.

68.    On its face, the Board HIB Policy is impermissibly vague inasmuch as it fails to provide a person or student of ordinary intelligence fair warning as to what conduct will be considered HIB conduct.

69.    On its face, the Board HIB Policy is impermissibly vague inasmuch as it fails to provide a person or student of ordinary intelligence fair warning as to what off-campus speech will be considered HIB conduct.

70.    In the alternative, the Board HIB Policy was erroneously applied to A.H.'s conduct because her conduct constituted political speech, satire, or other speech protected by the First Amendment and did not cause a substantial disruption to the orderly operation of Sayreville Middle School.

## SECOND COUNT:
## VIOLATION OF THE
## FIRST AMENDMENT TO THE
## UNITED STATES CONSTITUTION UNDER 42 U.S.C. § 1983
## AGAINST ALL DEFENDANTS

71.     Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

72.     Section 1983 of the Civil Rights Act of 1871, 42 U.S.C. § 1983 ("Section 1983"), provides, in relevant part, that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

73.     The First Amendment, as applied to the States through the Fourteenth Amendment, protects the right to freedom of speech.

74.     The Commissioner and the Board is each a "person" for purposes of Section 1983.

75.     In the events described here, the Commissioner was acting under color of New Jersey law.

76.     In the events described herein, the Board was acting under color of law, custom and usage pursuant to the Board HIB Policy and New Jersey law.

77.     A.H.'s statements, outlined above, were protected speech that lacked any meaningful nexus to Sayreville Middle School.

78.     The Board improperly disciplined A.H. for the exercise of her right to freedom of speech in violation of the First Amendment.

79.     The Board's determination that A.H. violated the Board HIB Policy and the imposition of consequences upon A.H., including her one-day suspension, removal from the Student Council, and removal of privileges, deprived A.H. of the rights guaranteed by the First Amendment of the United States Constitution and had, and will continue to have, a chilling effect on her exercise of First Amendment rights.

80.     The Commissioner's affirmance of the Board's HIB determination and the imposition of consequences upon A.H. deprived A.H. of the rights guaranteed by the First Amendment of the United States Constitution and will have a chilling effect on her exercise of First Amendment rights.

81.     While a school may squelch on-campus student speech in limited circumstances to prevent a substantial disruption of the educational process, schools and state actors may not use their power to target off-campus speech that was made

during non-school hours, made no mention of the school or any student, and which in any case did not cause a substantial disruption of the educational process.

82.     This is so even if the speech at issue offends the sensibilities of a school official.

83.     Use of the Anti-Bullying Bill of Rights and the Board's HIB Policy to regulate off-campus speech that lacks any meaningful nexus to the school is contrary to the United States Supreme Court's decisions regarding First Amendment speech and schools.

84.     Use of the Anti-Bullying Bill of Rights and the Board HIB Policy to regulate off-campus speech interfered with the fundamental parental rights of R.H. and M.H. to make decisions concerning the care, custody, and control of A.H.

85.     A.H. suffered damages as a result of the deprivation of her First Amendment rights by Defendants.

86.     R.H. and M.H. have suffered damages as a result of the deprivation of A.H.'s First Amendment Rights and the consequential interference with their parental rights.

**THIRD COUNT:**
**VIOLATION OF RIGHT TO FREE SPEECH**
**GUARANTEED BY ARTICLE I, PARAGRAPH 6 OF THE**
**NEW JERSEY CONSTITUTION AND THE**
**NEW JERSEY CIVIL RIGHTS ACT, N.J.S.A. 10:6-1, *ET SEQ.***
**AGAINST THE BOARD**

87. Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

88. Article I, Paragraph 6 of the New Jersey Constitution secures to every person the right to speak freely, and write and publish her sentiments on all subjects.

89. The New Jersey Civil Rights Act ("NJCRA") protects a person from the interference with, or deprivation of, any substantive due process or equal protection rights, privileges or immunities secured by federal and New Jersey law and the federal and New Jersey Constitutions.

90. The Board is a person for purposes of the NJCRA.

91. The Board's punishment of A.H. for speech that occurred outside of school hours, off school grounds and not at school-sponsored activities, and which did not, and could not have, materially or substantially interrupted the school environment, violated Article I, Paragraph 6 of the New Jersey Constitution.

92. The Board's punishment of A.H. violated clearly established rights under the federal and New Jersey Constitutions.

93. A.H. suffered damages as a result of the deprivation of her First Amendment rights by Defendants.

94.  R.H. and M.H. have suffered damages as a result of the deprivation of A.H.'s First Amendment Rights and the consequential interference with their parental rights.

## FOURTH COUNT:
## VIOLATION OF THE NEW JERSEY
## LAW AGAINST DISCRIMINATION, N.J.S.A. 10:5-1
## AGAINST THE BOARD

95.  Plaintiffs repeat and reallege each of the preceding paragraphs as if set forth at length herein.

96.  The New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"), provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation regardless of his or her race or color.

97.  As such, the NJLAD prohibits, among other things, any unlawful discrimination against any person because of such person's race or color.

98.  The NJLAD further prohibits so-called associational discrimination, whereby a person is aggrieved because the person is closely associated with a person protected by the NJLAD.

99.  The Sayreville Middle School and Sayreville War Memorial High School are places of public accommodation for purposes of NJLAD.

100.  As alleged herein, the Board has discriminated against A.H. based on her race.

101.   As alleged herein, the Board has discriminated against R.H. and M.H. by virtue of their association with A.H.

102.   The Board has violated the NJLAD and has damaged A.H., R.H. and M.H.

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A.   Declaring that the Anti-Bullying Bill of Rights Act, N.J.S.A. 18A:37-13.1, is impermissibly vague and unconstitutional;

B.   Vacating the Final Decision of the Commissioner of Education as violative of the United States Constitution;

C.   Enjoining the Commissioner of Education from enforcing the Act against A.H.;

D.   Declaring that the Board HIB Policy is impermissibly vague and unconstitutional;

E.   Vacating the Board's determination as to A.H.'s HIB violation;

F.   Directing the Board to remove from A.H.'s student records all mention of the Board's affirmative HIB determination;

G.   Awarding consequential damages to Plaintiffs as against the Board;

H.   Awarding Plaintiffs court costs, expert fees and reasonable attorneys' fees as provided by law; and

H.   Such other and further relief as this Court deems just and appropriate.

**JOHN RUE & ASSOCIATES**
Attorneys for Plaintiffs
A.H., R.H. and M.H.

Dated:  November 8, 2021          By:_____*s/ John Rue*_____
                                         JOHN RUE

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury of all issues so triable.

**JOHN RUE & ASSOCIATES**
Attorneys for Plaintiffs
A.H., R.H. and M.H.

Dated:  November 8, 2021      By:_____*s/ John Rue*_____
                                    JOHN RUE

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

**JOHN RUE & ASSOCIATES**
Attorneys for Plaintiffs
A.H., R.H. and M.H.

Dated:  November 8, 2021        By:_____*s/ John Rue*_____
                                                    JOHN RUE

## <u>DESIGNATION OF TRIAL COUNSEL</u>

John Rue, of the law firm of John Rue & Associates, LLC is hereby designated as

trial counsel.

**JOHN RUE & ASSOCIATES**
Attorneys for Plaintiffs
A.H., R.H. and M.H.

Dated:  November 8, 2021       By:_____*s/ John Rue*_____
                                JOHN RUE

EXHIBIT   B

**SAYREVILLE**                                      FILE CODE:  5131.1
**BOARD OF EDUCATION**                  **X**   Monitored
**POLICY**                                      **X**   Mandated
                                              **X**   Other Reasons

## HARASSMENT, INTIMIDATION OR BULLYING

The Board of Education believes that a safe and civil environment in school is necessary for students to learn and achieve high academic standards. Since students learn by example, school administrators, faculty, staff, and volunteers are required to demonstrate appropriate behavior, treating others with civility and respect, and refusing to tolerate harassment, intimidation or bullying. Harassment, intimidation or bullying, like other disruptive or violent behaviors, is conduct that disrupts both a student's ability to learn and a school's ability to educate its students in a safe environment. Therefore, the school district will not tolerate acts of harassment, intimidation or bullying.

The Board of Education expects all students to treat each other with civility and respect and not to engage in behavior that is disruptive or violent. The Board expects students to conduct themselves in keeping with their level of maturity, with a proper regard for the rights and welfare of other students, for school personnel, for the educational purpose underlying all school activities, and for the care of school facilities and equipment.

The standards of character education are an essential component of the Sayreville Public School District's Code of Conduct. The Board believes that with the appropriate infusion of character education into the school curriculum, modeling of appropriate behavior by adults; support and assistance of students in school, the community and home; our students will achieve the above standards of character education.

The Board prohibits acts of harassment, intimidation or bullying against any student. School responses to harassment, intimidation and bullying shall be aligned with the Board approved code of student conduct which establishes standards, policies and procedures for positive student development and student behavioral expectations on school grounds, including on a school bus or at school sponsored functions.  The Superintendent shall be responsible for ensuring the prompt investigation and response to all reports of harassment, intimidation and bullying committed on school grounds, at school activities and on school buses.  In addition, the Superintendent shall ensure that this policy is applied to incidents of harassment, intimidation and bullying that are committed off school grounds in cases where a school employee is made aware of such actions.  The Superintendent has the right and authority to impose a consequence on a student for conduct away from school grounds that is consistent with the board's approved code of student conduct, pursuant to N.J.A.C. 6A:16-7.1 and N.J.A.C. 6A:16-7.6.

This authority shall be exercised only when it is reasonably necessary for the student's physical or emotional safety, security and well-being or for reasons relating to the safety, security and well-being of other students, staff or school grounds, pursuant to N.J.S.A. 18A:25-2 and 18A:37-

**NJSBA POLICY AND LIBRARY RESOURCES**
**New Jersey School Boards Association, P.O. Box 909, Trenton, NJ 08605-0909**
*Copyright 2001 by NJSBA.  All rights reserved.*

SAYREVILLE                                          File Code:     5131.1
BOARD OF EDUCATION POLICY

HARASSMENT, INTIMIDATION OR BULLYING (continued)

2, and when the conduct which is the subject of the proposed consequence materially and substantially interferes with the requirements of appropriate discipline in the operation of the school. The Board directs the Superintendent or his or her appropriately trained and qualified designee to develop detailed regulations suited to the age level of the students and the physical facilities of the individual schools.

"Harassment, intimidation or bullying" is defined as any gesture, any written, verbal or physical act, or any electronic communication, whether it be a single incident or a series of incidents, that is reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic, that takes place on school grounds, at any school-sponsored function or on a school bus, or off school grounds, in accordance with law, that substantially disrupts or interferes with the orderly operation of the school or the rights of other students, and that:

A.   A reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his/her person or damage to his/her property; or

B.   Has the effect of insulting or demeaning any student or group of students; or

C.   Creates a hostile educational environment for the student by interfering with the student's education or by severely or pervasively causing physical or emotional harm to the student.

"Electronic communication" means a communication that is transmitted by means of an electronic device, including, but not limited to a telephone, cellular phone, computer, or pager.

Consequences and Remedial Measures for Acts of Harassment, Intimidation or Bullying

Students

Consequences and remedial measures for a student who commits an act of harassment, intimidation or bullying shall be varied and graded according to the nature of the behavior, the developmental age of the student and the student's history of problem behaviors and performance. Consequences shall be consistent with the board approved code of student conduct and N.J.A.C. 6A:16-7.  Consequences and remedial measures shall be designed to:

A.   Correct the problem behavior;

B.   Prevent another occurrence of the problem;

C.   Protect and provide support for the victim of the act; and

D.   Take corrective action for documented systemic problems related to harassment, intimidation or bullying.

Consequences and appropriate remedial actions for a student who commits an act of harassment, intimidation or bullying may range from positive behavioral interventions up to and

SAYREVILLE                                                      File Code:      5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING </u>(continued)

including short and long-term suspension or expulsion, as permitted by law. The consequences
and remedial measures may include, but are not limited to:

A.  Consequences

1.  Admonishment;

2.  Temporary removal from the classroom;

3.  Deprivation of privileges;

4.  Classroom or administrative detention;

5.  Referral to disciplinarian;

6.  In-school suspension during the school week or the weekend;

7.  After-school programs;

8.  Out-of-school suspension (short-term or long-term);

9.  Legal action; and

10. Expulsion.

B.  Remedial Measures

1.  Personal

a.  Restitution and restoration;

b.  Mediation;

c.  Peer support group;

d.  Recommendations of a student behavior or ethics council;

e.  Corrective instruction or other relevant learning or service experience;

f.  Supportive student interventions, including participation of the intervention and
referral services team;

g.  Behavioral assessment or evaluation, including, but not limited to, a referral to the
child study team, as appropriate;

h.  Behavioral management plan, with benchmarks that are closely monitored;

i.  Assignment of leadership responsibilities (e.g., hallway or bus monitor);

SAYREVILLE                                                    File Code:    5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)

     j.   Involvement of school disciplinarian;

     k.   Student counseling;

     l.   Parent conferences;

     m.  Student treatment; or

     n.   Student therapy.

2.  Environmental (Classroom, School Building or School District)

     a.   School and community surveys or other strategies for determining the conditions contributing to harassment, intimidation or bullying;

     b.   School culture change;

     c.   School climate improvement;

     d.   Adoption of research-based, systemic bullying prevention programs;

     e.   School policy and procedures revisions;

     f.   Modifications of schedules;

     g.   Adjustments in hallway traffic;

     h.   Modifications in student routes or patterns traveling to and from school;

     i.   Supervision of students before and after school, including school transportation;

     j.   Targeted use of monitors (e.g., hallway, cafeteria, locker room, playground, school perimeter, bus);

     k.   Teacher aides;

     l.   Small or large group presentations for fully addressing the behaviors and the responses to the behaviors;

     m.  General professional development programs for certificated and non-certificated staff;

     n.   Professional development plans for involved staff;

     o.   Disciplinary action for school staff who contributed to the problem;

     p.   Supportive institutional interventions, including participation of the intervention and referral services team;

     q.   Parent conferences;

SAYREVILLE                                                          File Code:      5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)

     r.   Family counseling;

     s.   Involvement of parent-teacher organizations;

Classified students are subject to the same disciplinary procedures as nondisabled students and may be disciplined in accordance with their IEP.   However, before disciplining a classified student, it must be determined that:

A.   The student's behavior is not primarily caused by his/her educational disability;

B.   The program that is being provided meets the student's needs.

<u>Staff</u>

Consequences and appropriate remedial actions for any staff member who commits an act of harassment, intimidation or bullying may range from positive behavioral interventions up to disciplinary charges which could result in suspension or termination. The consequences and remedial measures may include, but are not limited to:

A.   Consequences

    1.  Admonishment;

    2.  Temporary removal from the classroom;

    3.  Deprivation of privileges;

    4.  Referral to disciplinarian;

    5.  Withholding of Increment

    6.  Suspension;

    7.  Legal action; and

    8.  Termination

B. Remedial Measures

    1.  Personal

        a.  Restitution and restoration;

        b.  Mediation;

        c.  Support group;

        d.  Recommendations of behavior or ethics council;

SAYREVILLE                                                      File Code:    5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)

    e.   Corrective action plan;

    f.   Behavioral assessment or evaluation;

    g.   Behavioral management plan, with benchmarks that are closely monitored;

    h.   Involvement of school disciplinarian;

    i.   Counseling;

    j.   Conferences;

    k.   Treatment; or

    l.   Therapy.

2.  Environmental (Classroom, School Building or School District)

    a.   School and community surveys or other strategies for determining the conditions contributing to harassment, intimidation or bullying;

    b.   School culture change;

    c.   School climate improvement;

    d.   Adoption of research-based, systemic bullying prevention programs;

    e.   School policy and procedures revisions;

    f.   Modifications of schedules;

    g.   Supervision;

    h.   Small or large group presentations for fully addressing the behaviors and the responses to the behaviors;

    i.   General professional development programs for certificated and non-certificated staff;

    j.   Professional development plans for involved staff;

    k.   Disciplinary action;

    l.   Supportive institutional interventions, including participation of the intervention and referral services team;

    m.  Conferences;

    n.  Counseling;

SAYREVILLE                                                        File Code:     5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)

<u>Reporting Harassment, Intimidation and Bullying Behavior</u>

The Superintendent, principal and/or their designee shall be responsible for receiving complaints alleging violations of this policy.

The board shall allow reports to be anonymous, but no formal disciplinary action shall be based solely on an anonymous report. Any school employee, board member, contracted service provider, student, visitor or volunteer who has witnessed, or has reliable information that a student has been subject to harassment, intimidation or bullying, must report the incident to the building principal or his/her designee.

The following procedures shall apply to the reporting of incidents of harassment, intimidation and bullying:

A.  All acts of harassment, intimidation, or bullying shall be reported verbally to the school principal on the same day when the school employee or contracted service provider witnessed or received reliable information regarding any such incident;

B.  The principal shall inform the parents or guardians of all students involved in the alleged incident, and may discuss, as appropriate, the availability of counseling and other intervention services; and

C.  All acts of harassment, intimidation, or bullying shall be reported in writing to the school principal within two school days of when the school employee or contracted service provider witnessed or received reliable information that a student had been subject to harassment, intimidation, or bullying.

A board member, school employee, contracted service provider, student or volunteer who has witnessed, or has reliable information that a student has been subject to, harassment, intimidation or bullying shall report the incident to the building principal and any appropriate school official, or to any school administrator or safe schools resource officer, who shall immediately initiate the school district's procedures concerning school bullying.

A board member or a school employee who promptly reports an incident of harassment, intimidation or bullying, to the appropriate school official designated by the school district's policy, or to any school administrator or safe schools resource officer, and who makes this report in compliance with the procedures in this policy, shall be immune from a cause of action for damages arising from any failure to remedy the reported incident.

A school administrator who receives a report of harassment, intimidation, or bullying from a district employee, and fails to initiate or conduct an investigation, or who should have known of an incident of harassment, intimidation, or bullying and fails to take sufficient action to minimize or eliminate the harassment, intimidation, or bullying, may be subject to disciplinary action.

<u>District Anti-Bullying Coordinator</u>

SAYREVILLE                                                File Code:    5131.1
BOARD OF EDUCATION POLICY

HARASSMENT, INTIMIDATION OR BULLYING (continued)

The Superintendent shall appoint a district anti-bullying coordinator.  The Superintendent shall make every effort to appoint an employee of the school district to this position.  The district anti-bullying coordinator shall:

A.  Be responsible for coordinating and strengthening the school district's policies to prevent, identify, and address harassment, intimidation, and bullying of students;

B.  Collaborate with school anti-bullying specialists in the district, the board of education, and the Superintendent to prevent, identify, and respond to harassment, intimidation, and bullying of students in the district;

C.  Provide data, in collaboration with the Superintendent, to the Department of Education regarding harassment, intimidation, and bullying of students; and

D.  Execute such other duties related to school harassment, intimidation, and bullying as requested by the Superintendent.

The district anti-bullying coordinator shall meet at least twice a school year with the school anti-bullying specialists in the district to discuss and strengthen procedures and policies to prevent, identify, and address harassment, intimidation, and bullying in the district.

School Anti-Bullying Specialist

The principal in each school shall appoint a school anti-bullying specialist.  When a school guidance counselor, school psychologist, or another individual similarly trained is currently employed in the school, the principal shall appoint that individual to be the school anti-bullying specialist.  If no individual meeting these criteria is currently employed in the school, the principal shall appoint a school anti-bullying specialist from currently employed school personnel.  The school anti-bullying specialist shall:

A.  Chair the school safety team;

B.  Lead the investigation of incidents of harassment, intimidation, and bullying in the school; and

C.  Act as the primary school official responsible for preventing, identifying, and addressing incidents of harassment, intimidation, and bullying in the school.

School Safety Team

The district shall form a school safety team in each school to develop, foster, and maintain a positive school climate by focusing on the on-going, systemic process and practices in the school and to address school climate issues such as harassment, intimidation, or bullying.  The school safety team shall meet at least two times per school year.

The school safety team shall be appointed by the principal and consist of the principal or his or her designee who, if possible, shall be a senior administrator; a teacher in the school; the school anti-bullying specialist; a parent of a student in the school; and other members to be determined by the principal.  The school anti-bullying specialist shall serve as the chair of the school safety team.

SAYREVILLE                                                    File Code:    5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)

The school safety team shall:

A.  Receive any complaints of harassment, intimidation, or bullying of students that have been reported to the principal;

B.  Receive copies of any report prepared after an investigation of an incident of harassment, intimidation, or bullying;

C.  Identify and address patterns of harassment, intimidation, or bullying of students in the school;

D.  Review and strengthen school climate and the policies of the school in order to prevent and address harassment, intimidation, or bullying of students;

E.  Educate the community, including students, teachers, administrative staff, and parents, to prevent and address harassment, intimidation, or bullying of students;

F.  Participate in the training required pursuant to the provisions of (N.J.S.A.18A:37-13 et seq.) and other training which the principal or the district anti-bullying coordinator may request;

G.  Collaborate with the district anti-bullying coordinator in the collection of district-wide data and in the development of district policies to prevent and address harassment, intimidation, or bullying of students; and

H.  Execute such other duties related to harassment, intimidation, and bullying as requested by the principal or district anti-bullying coordinator.

No parent/guardian who is a member of the school safety team shall:

A.  Receive complaints of harassment, intimidation or bullying of students that have been reported to the principal;

B.  Receive copies of reports prepared after an investigation of a harassment, intimidation or bullying incident;

C.  Identify and address patterns of harassment, intimidation or bullying of students; or

D.  Participate in any other activities of the team which may compromise the confidentiality of a student.

<u>Investigating Reported Harassment, Intimidation and Bullying</u>

All reported incidents of harassment, intimidation and bullying shall be investigated promptly and in accordance with law and the following procedures:

A.  All investigations shall be thorough and complete, and documented in writing, and shall include, but not be limited to:

   1.  Taking of statements from victims, witnesses and accused;

SAYREVILLE                                                          File Code:      5131.1
BOARD OF EDUCATION POLICY

HARASSMENT, INTIMIDATION OR BULLYING (continued)

    2.  Careful examination of the facts;

    3.  Support for the victim; and

    4.  Determination if alleged act constitutes a violation of this policy.

B.  The investigation shall be initiated by the principal or the principal's designee within one school day of the report of the incident and shall be conducted by a school anti-bullying specialist. The principal may appoint additional personnel who are not school anti-bullying specialists to assist in the investigation.

C.  The investigation shall be completed as soon as possible, but not later than 10 school days from the date of the written report of the incident of harassment, intimidation, or bullying.  In the event that there is information relative to the investigation that is anticipated but not yet received by the end of the 10-day period, the school anti-bullying specialist may amend the original report of the results of the investigation to reflect the information.

D.  The results of the investigation shall be reported to the Superintendent within two school days of the completion of the investigation, and in accordance with law and board policy. The Superintendent may initiate intervention services, establish training programs to reduce harassment, intimidation, or bullying and enhance school climate, impose discipline, order counseling as a result of the findings of the investigation, or take or recommend other appropriate action.

E.  The results of each investigation shall be reported to the board of education no later than the date of the next board meeting following the completion of the investigation, and include:

    1.  Any services provided;

    2.  Training established;

    3.  Discipline imposed; or

    4.  Other action taken or recommended by the Superintendent.

F.  The Superintendent or his or her designee shall ensure that parents or guardians of the students who are parties to the investigation shall receive information about the investigation. This information shall be provided in writing within 5 school days after the results of the investigation are reported to the board and include:

    1.  The nature of the investigation;

    2.  Whether the district found evidence of harassment, intimidation, or bullying; or

    3.  Whether discipline was imposed or services provided to address the incident of harassment, intimidation, or bullying.

Range of Ways to Respond to Harassment, Intimidation or Bullying

SAYREVILLE                                                          File Code:     5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)

The Board of Education recognizes that some acts of harassment, intimidation or bullying may be isolated incidents requiring that the school officials respond appropriately to the individuals committing the acts and provide support programs for victims. Other acts may be so serious or parts of a larger pattern of harassment, intimidation or bullying that they require a response either at the classroom, school building or school district levels or by law enforcement officials.

In considering whether a response beyond the individual is appropriate, the administrator shall consider the nature and circumstances of the act, the degree of harm, the nature and severity of the behavior, past incidences or past or continuing patterns of behavior, and the context in which the alleged incident(s) occurred. Institutional (i.e., classroom; school building; school district) responses include:

A.  School and community surveys;

B.  Mailings;

C.  Focus groups;

D.  Adoption of research-based bullying prevention program models;

E.  Training for certificated and non-certificated staff;

F.  Participation of parents and other community members and organizations;

G.  Small or large group presentations for staff, students, and the community for fully addressing a positive school climate and culture as well as the issues surrounding harassment, intimidation and bullying in the school community; and

H.  The involvement of law enforcement officers, including school resource officers.

For every incident of harassment, intimidation or bullying, the district shall respond to the individual who committed the act. Responses may include:

A.  Individual responses can include positive behavioral interventions (e.g., peer mentoring, short-term counseling, life skills groups) and punitive actions (e.g., detention, in-school or out-of-school suspension, expulsion);

B.  Classroom responses can include class discussions about an incident of harassment, intimidation or bullying, role plays, research projects, observing and discussing audio-visual materials on these subjects and skill-building lessons in courtesy, tolerance, assertiveness and conflict management;

C.  School responses can include theme days, learning station programs, parent programs and information disseminated to students and parents, such as fact sheets or newsletters explaining acceptable uses of electronic and wireless communication devices;

D.  District-wide responses can include community involvement in policy review and development, professional development programs, adoption of curricula and school-wide programs and coordination with community-based organizations (e.g., mental health; health

SAYREVILLE                                                    File Code:    5131.1
BOARD OF EDUCATION POLICY

HARASSMENT, INTIMIDATION OR BULLYING (continued)

services; health facilities; law enforcement; faith-based).

The range of ways in which the school shall respond once an incident of harassment, intimidation or bullying is identified shall be defined by the principal in conjunction with the school anti-bullying specialist, and shall include an appropriate combination of counseling, support services, intervention services, and other programs as defined by the commissioner.

Retaliation and Reprisal Prohibited

The Board prohibits reprisal or retaliation or false accusation against any person who witnesses and/or reports an act of harassment, intimidation or bullying by any student, school employee, board member, contracted service provider, visitor or volunteer. The consequence and appropriate remedial action for a person who engages in reprisal or retaliation or false accusation shall be determined by the Superintendent and/or principal or their designee after consideration of the nature, severity and circumstances of the act, in accordance with case law and board policies and procedures.

Any act of retaliation or reprisal or false accusation against any person who reports an act of harassment, intimidation or bullying shall not be tolerated.  Any student, school employee, board member, contracted service provider, volunteer or visitor who engages in the act of retaliation or reprisal or who falsely accuses another shall be subjected to consequence and appropriate remedial action.  In cases where any state or federal law has allegedly been violated, the local law enforcement agency shall be notified.

A. Students

The consequences and appropriate remedial action for a student found to have engaged in retaliation, reprisal and/or falsely accused another as a means of harassment, intimidation or bullying shall be varied and graded according to the nature of the behavior, the developmental age of the student and the student's history of problem behaviors and performance, and shall be consistent with this policy. Consequences may include positive behavioral interventions, notification of the parents/guardians, up to and including short or long-term suspension or expulsion, as permitted by law;

B. School Employees

Consequences and appropriate remedial action for a school employee found to have engaged in retaliation, reprisal and/or falsely accused another as a means of harassment, intimidation or bullying shall be determined in accordance with district policies, procedures and agreements, up to and including suspension or dismissal from service;

C. Board Members

Consequences and appropriate remedial action for a board member found to have committed an act of harassment, intimidation, or bullying; or found to have engaged in retaliation, reprisal and/or falsely accused another as a means of harassment, intimidation or bullying shall be determined in accordance with district policies, procedures and agreements, up to and including a public sanction or filed ethics charges;

SAYREVILLE                                                    File Code:    5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)

D. Visitors, Volunteers, Contracted Service Providers, and All Other Persons

Consequences and appropriate remedial action for a visitor, volunteer, contracted service providers and all other persons found to have engaged in harassment, intimidation or bullying; or engaged in retaliation, reprisal and/or falsely accused another as a means of harassment, intimidation or bullying shall be determined by the Superintendent after consideration of the nature, severity and circumstances of the act, including reports to appropriate law enforcement officials.

Consequences and remediation for students, employees, board members, visitors, volunteers, and contracted service providers, engaging in harassment, intimidation or bullying or engaged in retaliation, reprisal and/or false accusations may include the following:

A.  Consequences

1.  Admonishment;

2.  Temporary removal from the classroom or school;

3.  Deprivation of privileges

4.  Prohibited from access to the school facilities (visitors, vendors, board members, all other people);

5.  Classroom or administrative detention;

6.  Referral to disciplinarian;

7.  In-school suspension during the school week or the weekend;

8.  After-school programs;

9.  Out-of-school suspension (short-term or long-term);

10. Legal action;

11. Withholding of Increment;

12. Suspension;

13. Expulsion;

14. Termination;

15. Termination of service agreements or contracts (vendors, volunteers);

16. Public sanction (board members);

17. Ethics charges (some administrators, board members).

SAYREVILLE                                                      File Code:    5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)


B.   Remedial Measures

    1.   Personal

        a.   Restitution and restoration;

        b.   Mediation;

        c.   Peer support group;

        d.   Recommendations of a student behavior or ethics council;

        e.   Corrective instruction or other relevant learning or service experience;

        f.   Supportive student interventions, including participation of the intervention and referral services team;

        g.   Behavioral assessment or evaluation, including, but not limited to, a referral to the child study team, as appropriate;

        h.   Behavioral management plan, with benchmarks that are closely monitored;

        i.   Assignment of leadership responsibilities (e.g., hallway or bus monitor);

        j.   Involvement of school disciplinarian;

        k.   Counseling;

        l.   Conferences;

        m.   Treatment; or

        n.   Therapy.

    2.   Environmental (Classroom, School Building or School District)

        a.   School and community surveys or other strategies for determining the conditions contributing to harassment, intimidation or bullying;

        b.   School culture change;

        c.   School climate improvement;

        d.   Adoption of research-based, systemic bullying prevention programs;

        e.   School policy and procedures revisions;

        f.   Modifications of schedules;

SAYREVILLE                                                      File Code:    5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)

      g.   Supervision;

      h.   Small or large group presentations for fully addressing the behaviors and the responses to the behaviors;

      i.   General professional development programs for certificated and non-certificated staff;

      j.   Professional development plans for involved staff;

      k.   Disciplinary action;

      l.   Supportive institutional interventions, including participation of the intervention and referral services team;

      m.   Conferences;

      n.   Counseling;

<u>Appeal Process</u>

The parent or guardian may request a hearing before the Board after receiving the information from the Superintendent regarding the investigation.  The hearing shall be held within 10 days of the request.   The Board shall meet in executive session for the hearing to protect the confidentiality of the students.  At the hearing the board may hear from the school anti-bullying specialist about the incident, recommendations for discipline or services, and any programs instituted to reduce such incidents.

At the next Board of Education meeting following its receipt of the report, the Board shall issue a decision, in writing, to affirm, reject, or modify the Superintendent's decision.  The Board's decision may be appealed to the Commissioner of Education, in accordance with law, no later than the 90 days after the issuance of the Board's decision.

A parent, student, guardian, or organization may file a complaint with the Division on Civil Rights within 180 days of the occurrence of any incident of harassment, intimidation, or bullying based on membership in a protected group as enumerated in the "Law Against Discrimination."

<u>Week of Respect</u>

The week beginning with the first Monday in October of each year is designated as a "Week of Respect" in the State of New Jersey.  The district, in order to recognize the importance of character education, shall observe the week by providing age-appropriate instruction focusing on preventing harassment, intimidation, or bullying as defined by law (N.J.S.A. 18A:37-14). Throughout the school year the district shall provide ongoing age-appropriate instruction focusing on preventing harassment, intimidation, and bullying in accordance with the Core Curriculum Content Standards.

<u>Training</u>

SAYREVILLE                                              File Code:     5131.1
BOARD OF EDUCATION POLICY

HARASSMENT, INTIMIDATION OR BULLYING (continued)

A.   School Leaders

Any school leader who holds a position that requires the possession of a Superintendent, principal, or supervisor endorsement shall complete training on issues of school ethics, school law, and school governance as part of the professional development for school leaders required in accordance with State Board of Education regulations.   This training shall also include information on the prevention of harassment, intimidation, and bullying (N.J.S.A. 18A:26-8.2).

B.   Teaching Staff Development

Each public school teaching staff member shall complete at least two hours of instruction in suicide prevention, to be provided by a licensed health care professional with training and experience in mental health issues, in each professional development period.  The instruction in suicide prevention shall include information on the relationship between the risk of suicide and incidents of harassment, intimidation, and bullying and information on reducing the risk of suicide in students who are members of communities identified as having members at high risk of suicide (N.J.S.A. 18A:6-112).

C.   Board Members

Within one year after being newly elected or appointed or being re-elected or re-appointed to the board of education, a board member shall complete a training program on harassment, intimidation, and bullying in schools, including a school district's responsibilities as required by law (N.J.S.A. 18A:37-13 et seq.).   A board member shall be required to complete the program only once (N.J.S.A. 18A:12-33).

D. Staff, Student and Volunteer Training

The school district shall:

1.   Provide training on the school district's harassment, intimidation, or bullying policy to school employees and volunteers who have significant contact with students;

2.   Provide ongoing staff training, in cooperation with the Department of Education, in fulfilling the reporting requirements;

3.   Ensure that the training includes instruction on preventing bullying on the basis of the protected categories as required by law (N.J.S.A.18A:37-14) and other distinguishing characteristics that may incite incidents of discrimination, harassment, intimidation, or bullying; and

4.   Develop a process for discussing the district's harassment, intimidation or bullying policy with students.

SAYREVILLE                                                      File Code:      5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)

Information regarding the school district policy against harassment, intimidation or bullying shall be incorporated into a school's employee training program and shall be provided to full-time and part-time staff, volunteers who have significant contact with students, and those persons contracted by the district to provide services to students.

Throughout the school year, the district shall provide ongoing age-appropriate instruction on preventing harassment, intimidation and bullying, consistent with the Core Curriculum Content Standards.

<u>Reporting to the Board</u>

Two times each year between September 1 and January 1 and between January 1 and June 30, the school board shall hold a public hearing at which the Superintendent will report to the board of education all acts of violence, vandalism, and harassment, intimidation, or bullying (HIB) which occurred during the previous reporting period. The report shall include the number of HIB reports in the schools, the status of all investigations, the nature of the HIB, and other data required by law.

A.  The number of reports of harassment, intimidation, or bullying;

B.  The status of all investigations;

C.  The nature of the bullying based on one of the protected categories identified in N.J.S.A. 18A:37-14 such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic;

D.  The names of the investigators;

E.  The type and nature of any discipline imposed on any student engaged in harassment, intimidation, or bullying; and

F.  Any other measures imposed, training conducted, or programs implemented, to reduce harassment, intimidation, or bullying.

<u>Reporting to the Department of Education</u>

The information, including but not limited to, oral reports, written reports or electronic reports shall also be reported once during each reporting period between September 1 and January 1 and between January 1 and June 30, to the Department of Education.  The report shall include:

A.  Data broken down by the enumerated categories including the protected categories as listed above and the type of harassment, intimidation and bullying (any gesture; any written, verbal or physical act; or any electronic communication, whether it be a single or series of incidents); and

B.  Data broken down by each school in the district, in addition to district-wide data.

The report shall be used to grade each school for the purpose of assessing its effort to implement

SAYREVILLE                                                        File Code:     5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)

policies and programs consistent with law (N.J.S.A. 18A:37-13 et seq.).  The district shall receive a grade determined by averaging the grades of all the schools in the district.

Each school shall post the grade received by the school and the overall district grade on the homepage of the school's website.  The district shall post all the grades for each school of the district and the overall district grade on the homepage of the district's website.  A link to the report shall be available on the district's website.  The information shall be posted on the websites within 10 days of the receipt of a grade by the school and district.

It shall be a violation to improperly release any confidential information not authorized by federal or State law for public release.

The Superintendent will annually submit the report to the Department of Education utilizing the Electronic Violence and Vandalism Reporting system (EVVRS).  The Superintendent shall accurately report on each incident of violence, vandalism, alcohol and other drug abuse, and incident of harassment intimidation and bullying within the school district.  Any allegations of falsification of data will be reviewed by the board of education using the requirements and procedures set forth in N.J.A.C. 6A:16-5.3(g).

The State Board of Education shall impose penalties on any school employee who knowingly falsifies the report. Therefore, the Superintendent shall make a reasonable effort to verify reports of violence, vandalism, and harassment, intimidation, or bullying.  The board shall provide ongoing staff training, in cooperation with the Department of Education, in fulfilling the reporting requirements.  The majority representative of the school employees shall have access monthly to the number and disposition of all reported acts of school violence, vandalism, and harassment, intimidation, or bullying.

<u>Program Assessment and Review</u>

Schools and school districts shall annually establish, implement, document, and assess bullying prevention programs or approaches, and other initiatives involving school staff, students, administrators, volunteers, parents, law enforcement and community members.  The programs or approaches shall be designed to create school-wide conditions to prevent and address harassment, intimidation, and bullying.

<u>Policy Development and Review</u>

The district harassment, intimidation and bullying policy shall be adopted through a process that includes representation of parents or guardians, school employees, volunteers, students, administrators, and community representatives.

The district shall annually conduct a re-evaluation, reassessment, and review of this policy, making any necessary revisions and additions.  The board shall include input from the school anti-bullying specialists in conducting its re-evaluation, reassessment, and review.  The district shall transmit a copy of the revised policy to the appropriate executive county superintendent within 30 school days of the revision (beginning September 1, 2011).

<u>Publication, Dissemination and Implementation</u>

SAYREVILLE                                                          File Code:     5131.1
BOARD OF EDUCATION POLICY

HARASSMENT, INTIMIDATION OR BULLYING (continued)

In publicizing this policy, the community including students, staff, board members, contracted service providers, visitors and volunteers, shall be duly notified that the rules detailed within apply to any incident of harassment intimidation and bullying that takes place on school grounds, at any school-sponsored function or on a school bus, or off school grounds that substantially disrupts or interferes with the orderly operation of the school or the rights of other students in accordance with law.

The Superintendent shall take the following steps to publicize this policy:

A.   Provide a link to this policy on a prominent place on the district website;

B.   Provide a link to this policy on a prominent place on each school's website;

C.   Distribute this policy annually to all staff, students and parents/guardians; and

D.   Print this policy in any district publication that sets forth the comprehensive rules, procedures and standards of student conduct and in student handbooks;

The district shall notify students and parents/guardians that the policy is available on the district's website.  The district shall publish the name, school phone number, school address and school email address of the district anti-bullying coordinator on the home page of the district website. Each school within the district shall publish the name, school phone number, school address and school email address of the district anti-bullying coordinator and their school anti-bullying specialist on the home page of the school's website. The information concerning the district anti-bullying coordinator and the school anti-bullying specialists shall also be maintained on the Department of Education's website.

Additionally, the district shall make available, in an easily accessible location of its website, the Department of Education's guidance document for the use by parent/guardians, students and district staff to assist in resolving complaints concerning student harassment, intimidation or bullying.

The Superintendent shall ensure that the rules for this policy are applied consistently with the district's code of student conduct (N.J.A.C. 6A:16-7) and all applicable laws and regulations. All disciplinary sanctions shall be carried out with necessary due process.

This and all related policies shall be reviewed on a regular basis.

SAYREVILLE                                                    File Code:    5131.1
BOARD OF EDUCATION POLICY

<u>HARASSMENT, INTIMIDATION OR BULLYING</u> (continued)

<u>Possible</u>
<u>Cross References</u>:   3541.33     Transportation safety
                          5114        Suspension and expulsion
                          5124        Reporting to parents/guardians
                          5131        Conduct/Discipline
                          R5131       Student Behavior on School Bus
                          5131.5      Vandalism/violence
                          5131.7      Weapons and dangerous instruments
                          5145.4      Equal educational opportunity
                          5145.6      Student grievance procedure
                          5145.11     Questioning and apprehension
                          5145.12     Search and seizure
                          6145        Extracurricular activities
                          6164.4      Child study team
                          6171.4      Special education
                          6172        Alternative educational programs

<u>Key</u> <u>Words</u>

Conduct, Discipline, Student Conduct, Student Conduct, Student Behavior on School Bus, Bullying, Intimidation, Harassment, Bus Driver, Weapons and Dangerous Instruments

Date Adopted:  08/23/2005

Date Revised:  11/21/2007, 12/16/2008, 08/18/2009, 12/15/2009, 08/16/2011