**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| R.H. and M.H. o/b/o A.H., <br><br> Plaintiffs, <br><br> v. <br><br> BOROUGH OF SAYREVILLE BOARD OF EDUCATION *et al.*, <br><br> Defendants. | Civil Action No. 21-19835 (ZNQ) (DEA) <br><br> **OPINION** |

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court on Defendant Borough of Sayreville Board of Education's (the "Sayreville BoE" or "Board") Motion to Dismiss the Complaint of Plaintiffs R.H. and M.H., on behalf of A.H. ("Plaintiffs"), for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 3.) Plaintiffs opposed the motion. (ECF No. 9.) The Board replied. (ECF No. 10.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Board's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Count I of Plaintiffs' Complaint is **DISMISSED** with prejudice; Count IV is **DISMISSED** without prejudice.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

      This lawsuit arises from school disciplinary measures taken against A.H., then an eighth-grade student at Sayreville Middle School, by the Sayreville BoE, in response to an offensive

1

social media post A.H. made while off school grounds and outside school hours. Plaintiffs now contend that, in light of the Supreme Court's recent decision in *Mahanoy Area School District v. B. L. by & through Levy*, 141 S. Ct. 2038 (2021), the disciplinary actions taken by the Board were violative of A.H.'s First Amendment rights. In addition, Plaintiffs assert that the adverse actions were taken by the Board pursuant to an unconstitutionally vague anti-bullying policy and amount to reverse racial discrimination.

### A.     The Parties

A.H. is a New Jersey citizen, residing in Parlin, New Jersey, who was a minor at the time of the events giving rise to this case. (*See* Compl. ¶ 3, ECF No. 1.) Specifically, during the 2016–17 school year, A.H. was an eighth-grade student at Sayreville Middle School. (*Id.* ¶ 14.) Plaintiff R.H. is A.H.'s father, and Plaintiff M.H. is A.H.'s mother. (*Id.* ¶¶ 4–5.) Both reside in Parlin, New Jersey. (*Id.*)

The Sayreville BoE is responsible for the supervision and management of the public schools within the Borough of Sayreville, New Jersey, and maintains offices in South Amboy, New Jersey. (*Id.* ¶¶ 6–7.) Angelica Allen-McMillian is the New Jersey Commissioner of Education.[1] (*Id.* ¶ 8.) In that role, Commissioner Allen-McMillian is charged with supervision of all schools of the state receiving support or aid from state appropriations. (*Id.*)

### B.     The Anti-Bullying Bill of Rights Act

In 2010, the State of New Jersey adopted what is known as the Anti-Bullying Bill of Rights Act, N.J.S.A. 18A:37-13.1, *et seq.* (the "Act"). (Compl. ¶ 21.) The Act sets forth the following definition for "Harassment, intimidation, or bullying":

> "Harassment, intimidation or bullying" means any gesture, any written, verbal or physical act, or any electronic communication,

---

[1] Commissioner Allen-McMillian has not entered an appearance in this case. The present motion to dismiss addresses liability only as to the Board.

2

> whether it be a single incident or a series of incidents, that is reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic, that takes place on school property, at any school-sponsored function, on a school bus, or off school grounds as provided for in section 16 of P.L.2010, c. 122 (C.18A:37-15.3), that substantially disrupts or interferes with the orderly operation of the school or the rights of other students and that:
>
> a. a reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his person or damage to his property;
>
> b. has the effect of insulting or demeaning any student or group of students; or
>
> c. creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student.

(*Id.* ¶ 22.) The Act further requires that each public school district in New Jersey adopt a harassment, intimidation, or bullying (hereinafter "HIB") policy consistent with the Act. (*Id.* ¶ 23.)

The Sayreville BoE adopted a HIB policy that generally mirrors the Act (the "Board HIB Policy"). (*Id.* ¶ 24.) The Board HIB Policy provides that it "shall be exercised only when it is reasonably necessary for the student's physical or emotional safety, security and well-being or for reasons relating to the safety, security and well-being of other students, staff or school grounds." (*Id.* ¶ 26.) Consistent with the Act, the Board HIB Policy regulates conduct "off school grounds, in accordance with law, that substantially disrupts or interferes with the orderly operation of the school or the rights of other students" and that meets the additional requirements noted above. (*Id.* ¶¶ 28–29.)

### C.     The HIB Incident and the Board's Response

On Saturday, February 11, 2017, A.H., then an eighth-grade student at Sayreville Middle School, posted a screenshot of a friend with a cosmetic mud mask on her face with the caption "when he says he's only into black girls" on her Instagram account.[2] (Compl. ¶ 29.) A.H. did not create the photo or draft the caption. (*Id.* ¶ 30.) A.H. added her own comment to the post that stated, "Ha, ha, ha! Love her – [laughing face], [laughing face]." (*Id.* ¶ 31.) A.H. posted the screenshot from her personal phone while she was at home, on an internet network and social media account unaffiliated with the Sayreville school system. (*Id.* ¶ 35.) A.H.'s friend in the post did not attend school in Sayreville. (*Id.* ¶ 37.)

On February 16, 2017, the Board received complaints regarding A.H.'s Instagram post. (*Id.* ¶ 41.) According to Plaintiffs, "[t]here were no altercations at Sayreville Middle School as a result of the post, no classes were canceled, and there was no need for an assembly to discuss the racial issues at the school." (*Id.* ¶ 42.) Rather "[t]he sole alleged disruption to the Board was to keep a close watch on the [Sayreville Middle School] students in the cafeteria due to the fear these students might confront A.H." (*Id.* ¶ 43.)

In response to the complaints, the Board launched a HIB investigation. (*Id.* ¶ 44.) The Board's HIB Specialist ultimately found that A.H.'s Instagram post violated the Board HIB Policy. (*Id.* ¶ 45.) The principal of Sayreville Middle School and the superintendent of the school district accepted the HIB's Specialist's assessment. (*Id.* ¶ 46.) The Board then affirmed the HIB determination and thereafter rejected A.H.'s appeal of that decision. (*Id.* ¶ 47.) As a result, A.H. received a one-day suspension from school, was removed from the Student Council, prevented

---

[2] Plaintiffs explain that the relevant post was made on a "Finstagram" (a contraction of "Fake" and "Instagram") account, which is intended for parody, as opposed to a real Instagram account, which is "for more polished and serious communications." (*Id.* ¶ 29 n.1.)

4

from attending a special trip for members of the Student Council, removed from the role of making the morning announcements at her school, and prohibited from attending a school assembly. (*Id.* ¶ 48.)

Following these disciplinary measures, Plaintiffs allege that A.H. endured harassment and bullying by her classmates. (*Id.* ¶ 50.) According to Plaintiffs, A.H.'s own HIB complaints in response to the alleged bullying were ignored and discounted by the Board "because she was Caucasian and the aggressors were not" and "to quell racial tensions within Sayreville Middle School at A.H.'s expense." (*Id.* ¶¶ 52–54.) Eventually, A.H. no longer felt safe attending school in Sayreville and transferred to a private school. (*Id.* ¶ 56.) Plaintiffs timely appealed the Board's HIB determination to the New Jersey Commissioner of Education. (*Id.* ¶ 58.)

### D.    Procedural History

On September 23, 2021, Commissioner Allen-McMillian affirmed the Board's HIB determination. (*See* Compl. ¶ 59.) On November 8, 2021, Plaintiffs filed a four-count Complaint, asserting the following claims: (I) declaratory judgment that the Act and the Board HIB Policy are unconstitutionally vague; (II) violation of the First Amendment of the U.S. Constitution pursuant to 42 U.S.C. § 1983; (III) violation of the New Jersey Constitution and the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-1, *et seq.*; (IV) violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.* (*Id.* ¶¶ 61–102.) The Board moved to dismiss Plaintiffs' claims. (*See* Board's Moving Br., ECF No. 3-4.) Plaintiffs opposed. (*See* Pls.' Opp'n Br., ECF No. 9.) The Board replied. (*See* Board's Reply Br., ECF No. 10.)

## II.   LEGAL STANDARD

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

5

"First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] . . . are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

### III.  DISCUSSION

The Board moves to dismiss each of Plaintiffs' claims under Rule 12(b)(6). (*See generally* Board's Moving Br.) First, the Board argues that neither the Act nor the Board HIB Policy is unconstitutionally vague, as an individual of ordinary intelligence would be on notice as to the type of conduct prohibited by each and that A.H.'s racially charged Instagram post put her at risk for disciplinary action. (*See id.* at 9–13.) Second, the Board argues that the disciplinary measures taken against A.H. were lawful because A.H.'s off-campus speech risked a serious disruption to school activity and was, therefore, not protected by the First Amendment. (*See id.* at 14–17.) Third, the Board asserts that Plaintiffs' NJLAD claim must be dismissed because Plaintiffs fail to allege facts demonstrating that A.H. suffered discriminatory treatment on

account of her race. (*See id.* at 18–20.)

Plaintiffs oppose the Board's motion, largely on the basis that the Board's actions violated A.H.'s First Amendment rights, particularly given the Supreme Court's decision in *Mahanoy Area School District v. B.L. by & through Levy*. (*See* Pls.' Opp'n Br. at 4–16.) There, the Supreme Court held that a public school's disciplinary measures against a student for speech that took place outside school hours and away from the school's campus violated the student's First Amendment rights. *See Mahanoy Area Sch. Dist.*, 141 S. Ct. at 2043. In so holding, the Supreme Court offered guidance for future cases involving school regulation of student speech, but declined to "set forth a broad, highly general First Amendment rule stating just what counts as 'off campus' speech and whether or how ordinary First Amendment standards must give way off campus to a school's special need to prevent, *e.g.*, substantial disruption of learning-related activities or the protection of those who make up a school community." *Id.* at 2045. Plaintiffs argue that the Supreme Court's treatment of the student's speech in *Mahanoy Area School District* demonstrates that A.H.'s Instagram post is also protected under the First Amendment. (*See* Pls.' Opp'n Br. 5–15.) Plaintiffs further argue that the Complaint states viable causes of action as to the impermissible vagueness of the Act and the Board HIB Policy and with respect to the Board's purported racial discrimination against A.H. in violation of the NJLAD. (*See id.* at 16–23.)

    **A.**    **First Amendment Vagueness Claim (Count I)**

Plaintiffs' first cause of action challenges the Act and the Board HIB Policy on the ground that each is impermissibly vague because neither provides fair notice that off-campus speech, such as the type at issue here, could lead to disciplinary action by the school. However, because the Act

7

and Board HIB Policy provide students with a sufficiently specific standard of conduct by which to abide, neither is impermissibly vague.

"Although the 'void-for-vagueness' doctrine was originally constructed to invalidate penal statutes that do not 'define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited,' . . . courts have transplanted this due process principle into the First Amendment setting." *Kreimer v. Bureau of Policy for Town of Morristown*, 958 F.2d 1242, 1266 (3d Cir. 1992) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357 (1983)). "[A] meritorious First Amendment vagueness challenge will annul an unclear law that 'chills' protected First Amendment activities," and, therefore, "a vagueness challenge will succeed when a party does not have actual notice of what activity the statute prohibits." *Id.*; *see Borden v. Sch. Dist. of Twp. of East Brunswick*, 523 F.3d 153, 167 (3d Cir. 2008) (explaining that "a statute is unconstitutionally vague when men of common intelligence must necessarily guess at its meaning") (internal quotations and citations omitted).

"When addressing school disciplinary rules, courts have been less demanding of specificity than they have when assessing the constitutionality of other regulations, such as criminal statutes." *Sypniewski v. Warren Hill Reg'l Bd. of Educ.*, 307 F.3d 243, 266 (3d Cir. 2002); *see also N.J. Freedom Org. v. City of New Brunswick*, 7 F. Supp. 2d 499, 514 (D.N.J. 1997) ("There is tolerance for a higher degree of vagueness when an ordinance provides for civil rather than criminal penalties."). Indeed, "because schools need the authority to control such a wide range of disruptive behavior," the Third Circuit has expressly instructed that "school disciplinary rules will be struck down on this basis only when the vagueness is especially problematic." *Sypniewski*, 307 F.3d at 266. "A sufficiently vague policy may fail to put students on fair notice of what is prohibited and provides insufficient standards for enforcement." *Id.* at 258.

8

Here, the Act sets forth a detailed definition of what constitutes "harassment, intimidation, or bullying." Specifically, the Act provides that communications or acts that are "reasonably perceived as being motivated either by any actual or perceived characteristic, such as race . . . that take[] place on school property, at any school-sponsored function, on a school bus, or off school grounds . . . [and] that substantially disrupt[] or interfere[] with the orderly operation of the school or the rights of other students" may be subject to regulation. N.J.S.A. § 18A:37-14. The Act further provides the following additional conditions must also be met: (1) "a reasonable person should know, under the circumstances, [the communication or act] will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his person or damage to his property"; (2) "has the effect of insulting or demeaning any student or group of students"; or (3) "creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student." *Id.* The Board HIB Policy provides essentially identical definitions and conditions for regulation of student speech. (*See* Certification of Eric L. Harrison, Esq. ("Harrison Cert."), Ex. B, ECF No. 3-6.)

Under the standard set forth above for school disciplinary regulations, neither the Act nor the Board HIB Policy is impermissibly vague. Several objective factors must be met before a student's speech falls within the prohibitions of the Act and the Board HIB Policy. First, the communication must be "reasonably perceived as being motivated either by any actual or perceived characteristic, such as race . . ." among other things. N.J.S.A. § 18A:37-14. "The 'reasonably perceived' test is an objective one that has withstood constitutional scrutiny," and does not present a vagueness issue. *See Melynk v. Teaneck Bd. of Educ.*, No. 16-0188, 2016 WL 6892077, at *8 (D.N.J. Nov. 22, 2016) (collecting cases). Second, the communication may be

subject to regulation, even if it is "off school grounds," if it "substantially disrupts or interferes with the orderly operation of the school or the rights of other students." N.J.S.A. 18A:37-14. In this way, the communication must fit within the general constitutional rule for regulation of student speech set forth in *Tinker v. Des Moines Independent Community School District.*, 393 U.S. 503 (1969). *See Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 211 (3d Cir. 2001). As such, by mirroring the constitutional standard, these prerequisites are "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *Sypniewski*, 307 F.3d at 266 (internal quotations and citations omitted). Further, both the Act and Board HIB Policy provide additional conditions, noted above, necessary for regulation of student speech, adding to their detail and precision, and going beyond what is constitutionally sufficient. The Board HIB Policy also delineates a comprehensive process by which complaints regarding student conduct are investigated and assessed. (*See* Harrison Cert., Ex. B.) Viewed in totality, the Act and Board HIB Policy are hardly imprecise, let alone impermissibly vague.

Plaintiffs ultimately do not identify any specific phrases in the Act or Board HIB Policy that present a vagueness concern; instead, Plaintiffs appear to argue that the Act and Board HIB Policy are impermissibly vague because the constitutional standards applicable to student speech purportedly lack clarity. (*See* Pls.' Moving Br. at 17–21.) But that circular argument misses the mark for purposes of a First Amendment vagueness challenge. The Act and Board HIB Policy set forth a "comprehensible normative standard" of conduct. *See Sypniewski*, 307 F.3d at 266. Courts have consistently held that "school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." *Id.* (quoting *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986)). And this District has previously upheld a virtually identical school HIB policy against

vagueness arguments. *See Melynk*, 2016 WL 6892077, at *9. Plaintiffs do not offer any contrary authority with respect to the vagueness doctrine. Plaintiffs' conclusory claim that the Act and the Board HIB Policy are impermissibly vague on their face, therefore, fails.

Plaintiff's vagueness claim fairs no better considering the particular facts of the present case, as an individual of ordinary intelligence would be on notice that A.H.'s social media post could fall within the scope of the Act and the Board HIB Policy. A.H.'s Instagram post was racially charged, including a photo of a friend wearing a mud mask and stating, "when he says he's only into black girls." Thus, the post could be reasonably perceived as being motivated by race. Although the post was made off school grounds, the Act and Board HIB Policy both make clear that such speech may be subject to regulation if it causes substantial disruption to school operations or interferes with the rights of other students. Given the racially offensive nature of the post and the fact that it was viewable to A.H.'s classmates via social media, any reasonable person would understand that the post had the potential to disrupt or interfere with school activities, regardless of whether it was intended to be humorous. For the same reasons, a person of ordinary intelligence would understand that the post could emotionally harm or demean a student or group of students. Further, A.H.'s post was investigated and adjudicated pursuant to these standards and the processes set forth in the Board HIB Policy. As such, the facts of the present case demonstrate that the Act and the Board HIB Policy are "specific enough to give fair notice to the students and to provide school officials with standards by which to enforce [them]." *Sypniewski*, 307 F.3d at 267. Thus, Plaintiffs' claim that the Act and Board HIB Policy are impermissibly vague as applied to A.H. likewise fails. Plaintiffs' First Amendment vagueness claim is dismissed with prejudice.

### B.     As-Applied First Amendment Claim (Counts II & III)

In addition to their cause of action asserting that the Act and the Board HIB Policy are unconstitutionally vague, Plaintiffs assert claims pursuant to section 1983 and the NJCRA that the Board directly violated A.H.'s First Amendment rights via the disciplinary actions taken against her. As set forth below, Plaintiffs' as-applied First Amendment challenge on behalf of A.H. survives the Board's motion to dismiss in view of the principles espoused in *Mahanoy Area School District v. B.L. by & through Levy*.

"To recover under 42 U.S.C. § 1983, [a plaintiff] must establish that a state actor engaged in conduct that deprived him of 'rights, privileges, or immunities' secured by the constitution or laws of the United States." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996)). Modeled after 42 U.S.C. § 1983, the NJCRA "creates a private cause of action for violations of civil rights secured under the New Jersey Constitution[]." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443 (D.N.J. 2011). "[C]ourts in New Jersey have consistently looked at claims under the NJCRA through the lens of § 1983." *Samoles v. Lacey Twp.*, No. 12-3066, 2014 WL 2602251, at *15 (D.N.J. June 11, 2014) (internal quotations and citations omitted). As such, Plaintiffs' free speech claims under section 1983 and the NJCRA are addressed in tandem.

The Supreme Court has "made clear that students do not 'shed their constitutional rights to freedom of speech or expression,' even 'at the school house gate.'" *Mahanoy Area Sch. Dist.*, 141 S. Ct. at 2044 (quoting *Tinker*, 393 U.S. at 506). It has "also made clear that courts must apply the First Amendment 'in light of the special characteristics of the school environment.'" *Id.* (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988)). There are "three specific categories of student speech that schools may regulate": (1) "indecent, lewd, or vulgar speech uttered during

a school assembly on school grounds"; (2) "speech, uttered during a class trip, that promotes illegal drug use"; and (3) "speech that others may reasonably perceive as bear[ing] the imprimatur of the school, such as that appearing in a school-sponsored newspaper." *Id.* (internal quotations and citations omitted). Further, the Supreme Court has consistently found that "schools have a special interest in regulating speech that 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others.'" *Id.* (quoting *Tinker*, 393 U.S. at 513).

In *Mahanoy Area School District*, relied upon by Plaintiffs, the Supreme Court held that a public high school violated the First Amendment rights of one of its students when it suspended the student from the school cheerleading team in response to a social media post, made off-campus and outside school hours, in which the student used vulgar language and gestures criticizing both the school and the school's cheerleading team. 141 S. Ct. at 2042. In reaching its decision, the Court rejected the notion that "the special characteristics that give schools additional license to regulate student speech always disappear when a school regulates speech that takes place off campus." *Id.* at 2045. Indeed, "[t]he school's regulatory interests remain significant in some off-campus circumstances." *Id.* However, the Court indicated that such circumstances are rare.

According to the Court, there are "three features of off-campus speech that often, even if not always, distinguish schools' efforts to regulate that speech from their efforts to regulate on-campus speech" and that "[t]hose features diminish the strength of the unique educational characteristics that might call for special First Amendment leeway." *Id.* at 2046. First, "a school, in relation to off-campus speech, will rarely stand *in loco parentis*," and thus, "off-campus speech will normally fall within the zone of parental, rather than school-related, responsibility." *Id.* Second, "from the student speaker's perspective, regulations of off-campus speech, when coupled with regulations of on-campus speech, include all the speech a student utters during the full 24-

13

hour day," and "[t]hat means courts must be more skeptical of a school's efforts to regulate off-campus speech." *Id.* Third, because "America's public schools are the nurseries of democracy," "the school itself has an interest in protecting a student's unpopular expression, especially when the expression takes place off campus." *Id.*

Here, taking the allegations set forth in Plaintiffs' Complaint as true, much like the student's speech in *Mahanoy Area School District*, A.H.'s Instagram post "did not involve features that would place it outside the First Amendment's ordinary protection." *Id.* The Instagram post included a screenshot of A.H.'s friend with a cosmetic mud mask on her face with the caption "when he says he's only into black girls," and the additional comment, made by A.H. herself, stating, "Ha, ha, Ha! Love her – [laughing face], [laughing face]." (*See* Compl. ¶¶ 29–31.) The post, while racially insensitive, did not amount to fighting words or obscenity. Rather, the post itself indicates that it was intended to be satirical (regardless of its satirical value), and, therefore, was the "kind of pure speech to which, were [A.H.] an adult, the First Amendment would provide strong protection." *Mahanoy Area School District*, 141 S. Ct. at 2047 (citing *Cohen v. California*, 403 U.S. 15, 24 (1971)). Further, similar to the speech at issue in *Mahanoy Area School District*, A.H.'s Instagram post "appeared outside of school hours from a location outside the school"; "[s]he did not identify the school in her post[] or target any member of the school community with vulgar or abusive language"; and A.H. "transmitted her speech through a personal cellphone" on her personal Instagram account to her friends and followers. *Id.* "These features of her speech, while risking transmission to the school itself, nonetheless . . . diminish the school's interest in punishing [A.H.'s] utterance." *Id.*

The Board contends that A.H.'s social media post was not protected by the First Amendment because the post risked serious disruption to school activity. (*See* Board's Moving Br.

at 16.) The Board specifically highlights that Plaintiffs even allege that, following complaints regarding the post, school administrators had to keep a close watch on students in the cafeteria due to fear of a confrontation between A.H. and other students, amid rising racial tensions at the school. (*See id.*) But, considering the guideposts set forth in *Mahanoy Area School District*, increased supervision of students in the cafeteria likely does not amount to "the sort of 'substantial disruption' of a school activity or a threatened harm to the rights of others that might justify the school's action." 141 S. Ct. 2047 (quoting *Tinker*, 393 U.S. at 514). "[F]or the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." *Tinker*, 393 U.S. at 509. In *Mahanoy Area School District*, distractions in Algebra class and heightened tensions among members of the school's cheerleading team due to the speech at issue were insufficient disruptions to school activity to warrant disciplinary action. 141 S. Ct. at 2047–48. The same conclusion is justified here regarding the increased supervision of students in the cafeteria because of A.H.'s Instagram post. According to Plaintiffs, "[t]here were no altercations at Sayreville Middle School as a result of the post" and "no classes were canceled."[3] (Compl. ¶ 42.) Accepting the facts set forth in Plaintiffs' Complaint as true, as is necessary at this stage, "[t]he alleged disturbance here does not meet *Tinker*'s demanding standard" for regulation of student speech, *Mahanoy Area School District*, 141 S. Ct. at 2048, especially considering that with respect to "off-campus speech . . . the leeway the First Amendment grants to schools in light of their special characteristics is

---

[3] To be sure, altercations among students or canceled classes do not represent the minimum standard for a "substantial disruption" to school activity. Plaintiffs' allegations are only notable insofar as they set forth the type of disruptions that supposedly did not occur as a result of A.H.'s speech.

15

diminished." *Id.* at 2046. For these reasons, the Board's motion to dismiss Plaintiffs' First Amendment claims is denied.

That said, whether A.H.'s Instagram post caused a substantial disruption sufficient for regulation of the speech by the Board is ultimately an issue of fact that is inappropriate for resolution on the instant motion to dismiss. Should discovery further elucidate disruption to school activity caused by A.H.'s post, such evidence may place A.H.'s speech outside the protections afforded by the First Amendment.

### C.     NJLAD Racial Discrimination Claim (Count IV)

Plaintiffs also assert a racial discrimination claim under the NJLAD against the Board. (*See* Compl. ¶¶ 95–102.) However, because Plaintiffs' allegations of discrimination are wholly conclusory and do not establish a causal nexus between the harm allegedly suffered by A.H. and A.H.'s race, Plaintiffs fail to state claim pursuant to the NJLAD.

Courts apply the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) in analyzing claims under the NJLAD. *See L.L v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 548 (3d Cir. 2017) (citing *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 211 (1999)). "And the New Jersey Supreme Court has made clear that the NJLAD applies in school settings." *Williams v. Lenape Bd. of Educ.*, No. 17-7482, 2020 WL 2111221, at *13 (D.N.J. May 4, 2020) (citing *L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ.*, 189 N.J. 381, 402 (2007)). "[I]n the educational context, to state a claim under the LAD, an aggrieved student must allege discriminatory conduct that would not have occurred 'but for' the student's protected characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or

16

offensive school environment, and that the school district failed to reasonably address such conduct." *L.W.*, 189 N.J. at 402–03.

Here, Plaintiffs' allegations fail to establish the first element of a *prima facie* case of race discrimination—namely, that the Board's disciplinary actions against A.H. and its purported inaction in response to her complaints of bullying following those disciplinary measures occurred because of her race. Plaintiffs' only allegations in this regard are that the Board "ignored and/or discounted A.H.'s complaints because she was Caucasian and the aggressors were not" and "to quell racial tensions within Sayreville Middle School at A.H.'s expense." (Compl. ¶¶ 53–54.) But "a court need not credit a complaint's 'bald assertions' . . . when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citation omitted). Beyond these conclusory allegations, nothing in Plaintiffs' Complaint supports the inference that A.H. was treated differently than other students due to her race. Even accepting that A.H. is "Caucasian and the aggressors were not," absent additional information, that fact hardly leads to the conclusion of discriminatory treatment based on her race, particularly considering it was A.H.'s speech that gave rise to the Board's initial HIB response.

Ultimately, Plaintiffs conflate the two, arguing that A.H.'s speech included racial elements and that the purportedly discriminatory treatment she suffered, therefore, must have been because of her race. (*See* Pls.' Opp'n Br. at 23.) However, Plaintiffs fail to provide any authority supporting that assertion. Indeed, Plaintiffs' initial burden on a racial discrimination claim is to allege facts demonstrating that the supposedly discriminatory conduct would not have occurred "but for"

A.H.'s race. *See L.W.*, 189 N.J. at 402. Plaintiffs cannot simply repackage their First Amendment claim in terms of reverse race discrimination. Plaintiffs' NJLAD claim is, therefore, dismissed.[4]

## IV.   CONCLUSION

For the reasons stated above, the Board's Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Count I of Plaintiffs' Complaint is **DISMISSED** with prejudice; Count IV is **DISMISSED** without prejudice. Plaintiffs may amend their Complaint **within 30 days**. An appropriate Order will follow.

Date: **May 12, 2023**

          s/ Zahid N. Quraishi
          **ZAHID N. QURAISHI**
          **UNITED STATES DISTRICT JUDGE**

---

[4] In conjunction with the racial discrimination claim on A.H.'s behalf, Plaintiffs also assert an associational discrimination claim on behalf of R.H. and M.H. under the NJLAD by virtue of their parental association with A.H. (*See* Compl. ¶ 101.) However, because the associational discrimination claim is premised on the race claim, it too is dismissed.

18